**FILED**

OA 91   Criminal Complaint

# United States District Court

NOV 0 2 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NORTHERN                    DISTRICT OF                    CALIFORNIA

UNITED STATES OF AMERICA
V.

Donal Brent Romano
3 Sunshine Avenue
San Geronimo, CA 94963

## CRIMINAL COMPLAINT

**BZ**

Case Number: 3    0 7    7 0 6 5 S

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my

knowledge and belief.  On or about  November 28, 2005      in  San Francisco           County, in

    (Date)

the   Northern              District of   California                       defendant(s) did,

(Track Statutory Language of Offense)

knowingly execute a scheme and artifice to defraud Friedkin Realty Group and for the purpose of executing said scheme and artifice to defraud did knowingly cause a check to be mailed by the United States Postal Service

in violation of Title 18              United States Code, Section(s) 1341                     .

I further state that I am a(n)  Special Agent with the F.B.I.          and that this complaint is based on the
                                    Official Title

following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:          ☒ Yes       ☐ No

Approved
As To
Form:    Jeffrey Finigan
         AUSA

Keith Nelson
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

November 2, 2007
Date

at   San Francisco, CA
         City and State

Bernard Zimmerman,              U.S. Magistrate Judge

Name & Title of Judicial Officer

Signature of Judicial Officer

UNITED STATES OF AMERICA          )
                                  )
                                  )
v.                                )       **AFFIDAVIT OF SPECIAL AGENT**
                                  )       **KEITH L. NELSON**
                                  )
DONALD BRENT ROMANO               )
_____ )

　　　This affidavit is submitted in support of a criminal complaint against DONALD BRENT
ROMANO.

## Agent Background

　　　1.　　I, Keith L. Nelson, first being duly sworn, depose and state that I am a Special
Agent with the Federal Bureau of Investigation (FBI) and have been so employed since May
2005. I am currently assigned to the FBI's San Francisco Field Office. Prior to joining the FBI, I
worked for fourteen years at a forensic accounting firm as a Certified Public Accountant and
Certified Fraud Examiner. I am assigned to investigate white collar crime matters such as
corporate fraud, securities fraud, bank fraud, conspiracy, mail fraud, and wire fraud among other
things.

　　　2.　　I am the case agent assigned to investigate allegations of mail and wire fraud by
DONALD BRENT ROMANO, a former employee of Friedkin Realty.

　　　3.　　In the course of my investigation, I have obtained information from the following
sources: interviews conducted by Special Agents of the FBI; documents obtained from Friedkin
Realty Group ("Friedkin") and Friedkin's attorney, John Dahlberg of Dillingham & Murphy;
documents received from Bank of America, Comerica Bank, Redding Bank of Sacramento and
Washington Mutual Bank; and credit card information from Chase, Capitol One and First Bank.
The facts herein are based on information obtained from these sources.

## Summary of Basis for Charge

　　　4.　　While ROMANO was the Chief Financial Officer ("CFO") of Friedkin, he
devised and executed a scheme and artifice to defraud Friedkin by abusing his authority over
Friedkin financial accounts by writing checks against Friedkin accounts and making wire
transfers from Friedkin accounts in order to transfer money into his own personal accounts or
accounts under his control and for his benefit and to pay for personal expenses having nothing to
do with legitimate Friedkin business.

1

## Facts

5.    At all times alleged herein, Friedkin was a real estate and property management company located in San Francisco with a twofold business: (1) they managed residential properties (i.e. apartment complexes) for their own investors; and (2) they managed properties for third party owners. Friedkin employed ROMANO as its controller in approximately 1992 and he later became its CFO. As CFO, ROMANO had control over the company's financial and accounting practices, including its checks and bank statements. ROMANO had the authority to write checks and make wire transfers of Friedkin funds for legitimate business purposes.

6.    In 1995, ROMANO had an accounting staff of approximately eight accountants. ROMANO described the office expense account to his staff as a distribution account for the owner of Friedkin, Mort Friedkin. ROMANO told his staff they were not to review this account and that he was the person responsible for the account. ROMANO controlled the office expense account from 1995 through his termination from Friedkin in 2005.

7.    In August 2005, Friedkin hired Jonathan Gaule to serve as its Chief Operating Officer, and his responsibilities included reviewing the company's accounting practices. On November 10, 2005, Gaule learned that a Friedkin employee found a suspicious Comerica Bank check and that the check related to the company's office expenses. The check was made payable to ROMANO, had ROMANO's signature on it, and was recorded as paying for "computer equipment." The company could find no supporting documentation for the charge.

8.    Friedkin began an investigation into checks from Comerica Bank and expenses recorded in the office expense account. The company discovered many other transactions that did not appear to pertain to company business and many of these transactions appeared to benefit ROMANO. During the course of Friedkin's internal investigation they discovered the following:

a.    Between April 2, 1999 and October 25, 2002, ROMANO transferred $1,614,995 to his personal bank account at Bank of America. The account related to an apartment complex that ROMANO owned called Alexander's Place Apartments. The money was used to maintain and operate the property.

b.    Between October 17, 2001 and July 22, 2003, ROMANO transferred $1,165,000 to another personal bank account at Bank of America. The account related to a sixty unit apartment complex that ROMANO owned in Sacramento, California called College Oaks Apartments. The money was used to provide a major overhaul of the property, normal maintenance and operations of the property. The last fraudulent wire transfer ROMANO made was on July 22, 2003. The total wire transfers ROMANO made between April 2, 1999 and July 22, 2003 was $2,779,995.

2

c. Between January 1, 1994 and December 6, 2005, and including the fraudulent transfers described above in ¶¶8.a. and 8.b., Friedkin Realty estimated ROMANO transferred $5,439,754 in funds from the Friedkin Realty office expense account to his own accounts or for payments to his creditors. The total embezzlement consisted of $2,779,995 in wire transfers and $2,659,759 in the form of checks. ROMANO used the checks to transfer funds to bank accounts under his control and to make payments on personal expenditures. These expenditures included his credit card bills, property taxes, and monthly expenses such as his cable bill.

d. ROMANO primarily used Friedkin's office expense account when he wrote checks for his personal use. The office expense account required two signatures on all checks. During the course of their investigation, Friedkin discovered a rubber stamp with a signature plate on it. The plate had the signature of ROMANO and another authorized signatory, Mort Friedkin. Mort Friedkin provided a declaration that he never signed any of the checks that have been identified as fraudulent. In many instances, ROMANO wrote in the memorandum section of the Friedkin check his own credit card number or other personal information for which he was sending payment.

d. On December 6, 2005, Gaule asked ROMANO to attend a meeting. During the course of the meeting, Gaule presented ROMANO with copies of multiple Friedkin checks they suspected were written by ROMANO for his own personal use and asked ROMANO to explain the suspicious activity in the office expense account. According to Gaule, ROMANO said "I've been stealing" and then declined to say anything further.

## Mail Fraud

9. Check number #109 from the Friedkin Realty Office Expense account was dated November 28, 2005 and made payable to American Express for $23,377.33. The check was signed by DONALD B. ROMANO and, ostensibly, Morton L. Friedkin. Account number 3713-875365-35000 is written in the memorandum section of the check. The check posted to the Friedkin account on November 30, 2005.

10. ROMANO's American Express account number is 3713-875365-35000 and the statement for the period ending December 17, 2005, shows a previous account balance of $23,377.33 and a payment of $23,377.33 that was received on November 30, 2005. The address of the American Express payment center is Box 0001, Los Angeles, CA 90096-0001 and the billing address on the statement for ROMANO is his home mailing address of PO Box 309, San Geronimo, CA 94963-0309. The physical distance between these two addresses indicates ROMANO mailed the payment to American Express. I have also spoken to an American Express investigator that verified the check was received at the BOX 0001, Los Angeles, California address. He further advised the address is a lockbox and an individual could not drop off a payment at this location in person.

3

## Conclusion

11.    Based on the above, there is probable cause to believe that on or about November 28, 2005, in furtherance of executing ROMANO's scheme and artifice to defraud Friedkin, ROMANO did knowingly cause to be mailed by the United States Postal Service a check in payment for ROMANO's personal American Express account number 3713-875365-35000, in violation of 18 U.S.C. § 1341 (mail fraud).

Keith L. Nelson
Special Agent
Federal Bureau of Investigation

Sworn and Subscribed To Before
Me This _____ Day of November, 2007

Bernard Zimmerman
United States Magistrate Judge

4