JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

JEFFREY R. FINIGAN (CABN 168285)
Assistant United States Attorney

    450 Golden Gate Avenue
San Francisco, California 94102
Telephone: (415) 436-7232
Facsimile: (415) 436-7234
Email: jeffrey.finigan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0798 MHP |
| Plaintiff, | ) | |
| v. | ) | UNITED STATES' SENTENCING MEMORANDUM & DOWNWARD DEPARTURE MOTION |
| DONALD BRENT ROMANO, | ) | Date: July 21, 2008 |
| Defendant. | ) | Time: 9:00 a.m. |
| | ) | Court: Hon. Marilyn Hall Patel |

I.    **Introduction**

    The defendant pled guilty to count one of the captioned information charging him with

mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346.  In the presentence investigation report

(PSR), the Probation Department ("Probation") calculates the defendant's Guidelines as a total

offense level of 24, criminal history category III, with a corresponding sentencing range of 63-78.

Probation recommends departing downward to a criminal history category I based on the

argument that the defendant's criminal history is overstated.  PSR at ¶64 and Sentencing

Recommendation. That recommendation leads to a sentencing range of 51-63 months. Probation then recommends a sentence below that range of 36 months based, at least in part, on the defendant's efforts to make the victim whole. PSR, Sentencing Recommendation.[1] Probation also recommends various conditions of supervised release and restitution of $600,000.

The government agrees with Probation's Guideline calculation, but disagrees with the departure based upon an overstated criminal history. Nevertheless, the government moves herein for a two-level reduction on the specific basis that the defendant has made exceptional efforts to remedy the harm caused pursuant to U.S.S.G. § 5K2.0(a)(4). Accordingly, the government's proposed total offense level is 22 and corresponding sentencing range is 51-63. For the reasons set forth herein, the government respectfully requests that the Court impose the following sentence:

- • 51 months in prison;
- • 3 years of supervised release with the conditions set forth in the PSR (unless otherwise specified in this memorandum);
- • Restitution of $600,000 payable to: Friedkin Realty Management Group, Inc., 44 Montgomery Street, 41st Floor, San Francisco, CA 94104, Attn: Mr. Morton L. Friedkin; and
- • $100 mandatory special assessment.

## II. Facts

Friedkin Realty Management Group, Inc. ("Friedkin"), is a real estate and property management company located in San Francisco with a twofold business: (1) they manage residential properties (e.g. apartment complexes) for their own investors; and (2) they manage properties for third party owners. Friedkin employed the defendant as its controller in approximately 1992 and he later became its CFO. As CFO, the defendant had control over the company's financial and accounting practices, including its checks and bank statements. The defendant had the authority to write checks and make wire transfers of Friedkin funds for

---

[1] It is unclear why Probation considers this factor relevant pursuant to 18 U.S.C. § 3553, yet disagrees with the government's recommended downward departure on this basis pursuant to U.S.S.G. § 5K2.0(a)(4).

legitimate business purposes.

In 1995, the defendant had an accounting staff of approximately eight accountants. The defendant described the office expense account to his staff as a distribution account for the owner of Friedkin, Mort Friedkin. The defendant told his staff they were not to review this account and that he was the person responsible for the account. He controlled the office expense account from 1995 through his termination from Friedkin in 2005. In August 2005, Friedkin hired Jonathan Gaule to serve as its Chief Operating Officer, and his responsibilities included reviewing the company's accounting practices. On November 10, 2005, Gaule learned that a Friedkin employee found a suspicious Comerica Bank check and that the check related to the company's office expenses. The check was made payable to the defendant, had the defendant's signature on it, and was recorded as paying for "computer equipment." The company could find no supporting documentation for the charge.

Friedkin began an investigation into checks from Comerica Bank and expenses recorded in the office expense account. The company discovered many other transactions that did not appear to pertain to company business and many of these transactions appeared to benefit the defendant. During the course of Friedkin's internal investigation they discovered the following: (1) Between April 2, 1999 and October 25, 2002, the defendant transferred $1,614,995 to a bank account at Bank of America related to an apartment complex that the defendant owned called Alexander's Place Apartments; the money was used to maintain and operate the property; (2) Between October 17, 2001 and July 22, 2003, the defendant transferred $1,165,000 to another bank account at Bank of America related to an apartment complex that the defendant owned called College Oaks Apartments; the money was used to provide a major overhaul of the property, normal maintenance and operations of the property. In all, between January 1, 1994 and December 6, 2005, the defendant transferred more than $5,500,000 in funds from Friedkin's office expense account to his own accounts or for payments to his creditors. The defendant used the checks to transfer funds to bank accounts under his control and to make payments on personal expenditures (e.g. credit card bills, property taxes, and monthly expenses such as his cable bill).

The defendant primarily used Friedkin's office expense account when he wrote checks for his personal use.  The office expense account required two signatures on all checks.  During the course of their investigation, Friedkin discovered a rubber stamp with a signature plate on it.  The plate had the signature of the defendant and another authorized signatory, Mort Friedkin.  Mort Friedkin never signed any of the checks that have been identified as fraudulent. In many instances, the defendant wrote in the memorandum section of the Friedkin check his own credit card number or other personal information for which he was sending payment.

On December 6, 2005, Gaule asked the defendant to attend a meeting.  During the course of the meeting, Gaule presented the defendant with copies of multiple Friedkin checks they suspected were written by the defendant for his own personal use and asked the defendant to explain the suspicious activity in the office expense account.  According to Gaule, the defendant said "I've been stealing" and then declined to say anything further.

Check number #109 from the Friedkin account was dated November 28, 2005 and made payable to American Express for $23,377.33.  The check was signed by Donald B. Romano and, ostensibly, Morton L. Friedkin.  Account number 3713-875365-35000 is written in the memorandum section of the check.  The check posted to the Friedkin account on November 30, 2005.  The defendant's American Express account number is 3713-875365-35000 and the statement for the period ending December 17, 2005, shows a previous account balance of $23,377.33 and a payment of $23,377.33 that was received on November 30, 2005.  The defendant mailed the check to the American Express payment center.

Friedkin filed a civil lawsuit against the defendant in San Francisco Superior Court.  The defendant's ex-wife is also a party the suit, which significantly complicated the victim's efforts to obtain restitution.  According to Friedkin's counsel, the defendant was cooperative and made significant restitution before the criminal case was filed.  Further, as part of the defendant's plea agreement, he agreed to sit for a deposition in the civil case.  Although the deposition process was acrimonious at times, it lasted several days and was ultimately completed to the victim's benefit.  Since his guilty plea, the defendant has also transferred his interest in additional assets, including his home, to the victim in an effort to make full restitution.  To that end, although the

1
2
3

victim is not yet whole, the defendant has depleted his assets to the extent possible at this point in time and has agreed to make additional restitution of $600,000.  This latter agreement was acceptable to the victim and has enabled the victim to bring finality to the civil matter.

4
5
6

**III.    Proposed Sentence**

    **A.    The government's proposed sentence is fair and reasonable pursuant to the Guidelines and 18 U.S.C. § 3553.**

7
8
9
10
11
12
13
14
15
16
17
18

A sentence within the Guideline range is entirely appropriate.  The defendant schemed to steal from his employer who trusted him, and his criminal conduct was sophisticated and spanned at least ten years.  There was an extremely significant financial loss of more than $5,500,000 to the victim and, despite making significant efforts towards restitution, the victim is not yet whole and it is unlikely the victim ever will be.  There are no factors, other than those set forth herein, warranting a sentence below the applicable Guideline range.  Nevertheless, a sentence at the low end of the applicable Guideline range reflects a genuine reduction in consideration of the defendant's restitution efforts.  The high end of offense level 22 and criminal history category III is 63, which is a sentence available in the offense level 24 range, *i.e.* the applicable range absent a downward departure motion.  Thus, to give the downward departure motion some true meaning in this particular context, the government respectfully recommends a low-end sentence.

19
20

Applying the factors in 18 U.S.C. § 3553(a) to this case leads to the conclusion that a 51-month sentence is reasonable:

21
22
23
24

• the nature and circumstances of the offense are that it was an extremely serious abuse of power and position of trust in order to steal a significant amount of money from an employer; the history and characteristics of the defendant are that he has a significant, albeit somewhat dated, criminal history;

25
26

• a sentence of 51 months will reflect the seriousness of the offense, promote respect for the law, and provide just punishment; and

27

• the proposed sentence will deter future criminal conduct by the defendant and others.

28

**B.    Probation's proposed reduction of the defendant's criminal history category is contrary to the Guidelines and unjust pursuant to 18 U.S.C. § 3553.**

Any reduction of the sentencing range below the applicable Guidelines based on an overstated criminal history is not warranted.  Although the defendant's convictions garnering criminal history points are 20 years old or more, it must also be noted that he has five additional convictions for which he received no criminal history points at all.  Thus, any arguable overstatement represented by the crimes set forth at PSR ¶¶ 31 and 33 should be offset by the benefit he receives of not having any points assigned to the crimes set forth at PSR ¶¶ 27-30, and 32.  The additional  30% departure Probation recommends (*i.e.*, from 51 months to 36 months) is reserved for situations where the applicable criminal history category "substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." §4A1.3(b)(1) (emphasis added).  Even in that situation, the Guidelines state only that a departure may be warranted.  *Id.*  The seriousness of the defendant's convictions are not substantially overstated simply because they are dated.  Conspiracy to distribute a huge amount of cocaine is serious, regardless of its age, and the defendant's record is peppered with other convictions, which indicates the conspiracy to distribute cocaine was not an isolated instance.

Assigning a criminal history category I to the defendant would be contrary to the mandate of the Guidelines and unjust pursuant to 18 U.S.C. § 3553.  Criminal history category I is reserved for individuals with no criminal history or only a very minor conviction or convictions.  It is unjust for a person with such a slight criminal background to receive a sentence commensurate with this defendant, who has amassed a significant criminal history.  The example set forth in the Guidelines is illustrative:

> A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period.

§4A1.3 Commentary Background.  The defendant's parole on his 1978 conspiracy to distribute cocaine conviction terminated November 18, 1989, and he was apparently on probation for his

1987 DUI conviction until October of 1990.  PSR ¶¶ 31 and 33.  Within just four years of ending

his probation, *i.e.* January 2004, and within less than two years of being hired by Friedkin in

April of 1992, the defendant began what would amount to an 11-year crime spree stealing from

his employer.  PSR ¶¶ 6-8.  Thus, his offenses have not been "minor" by any stretch of the

imagination and there was absolutely no significant crime-free intervening period between the

defendant's prior convictions and the instant offense.  Thus, Probation's recommended reduction

of the defendant's criminal history category should be rejected and the defendant should be

treated in accord with his applicable criminal history category of III.

**IV.    Conclusion**

The government's proposed sentence fairly takes into consideration the defendant's

restitution efforts and sets forth a just and reasonable sentence.  The substantial additional 30%

reduction suggested by Probation is unjustified and unfair to defendants convicted of similar

crimes, but with insignificant criminal histories.  Accordingly, the government respectfully

requests the Court to sentence the defendant as proposed herein.


DATED: July 14, 2008                          Respectfully submitted,

                                              JOSEPH P. RUSSONIELLO
                                              United States Attorney


                                              _____/s/_____
                                              JEFFREY R. FINIGAN
                                              Assistant United States Attorney